# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
MATTHEW J. CHANG,                                      )
                                                       )
Plaintiff,                                             )
                                                       )
v.                                                     )          Civil Action No. 07-2139 (RCL)
                                                       )
MICHAEL CHERTOFF,                                      )
Secretary, Homeland Security, *et al.*,                )
                                                       )
Defendants.                                            )
_____)

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER AND ALTERNATIVE MOTION TO TRANSFER

Federal district courts lack jurisdiction to review mandamus or Administrative Procedure

Act ("APA") "unreasonably delay" complaints which contend that United States Citizenship and

Immigration Services ("USCIS") has taken too long to complete its review of an alien's

application for permanent residency status.  The contrary precedent on which Plaintiff relies

reflects the minority view[1] among the judges in this District who have reviewed that

jurisdictional issue, and is not binding upon this Court.[2]  District Judges Bates, Leon, and

numerous judges in other districts have dismissed similar complaints for lack of jurisdiction,

---

1. The majority of judges in other districts have refused to exercise jurisdiction.  See Wang v. Chertoff, 2007 WL 4139475, * 5 (N.D. Ga. Oct. 30, 2007) ("A *minority* of district courts in this and other circuits exercised jurisdiction to prevent 'unreasonable delays' in adjustment of status applications.") (emphasis added).
2. Plaintiff mentioned four times in its Opposition that Defendants' Motion to Dismiss or In the Alternative to Transfer is untimely.  Opp. at 1, 3-4.  However, on March 18, 2008, by a Minute Order granting Defendants' Motion for an Extension of Time (Dkt. Entry 11), this Court ruled that Defendants' Motion to Dismiss or In the Alternative to Transfer (Dkt. Entry 15) is not untimely.

reasoning that Congress has not authorized federal district courts to intervene in the adjudicative process and determine how much time USCIS should devote to assessing whether it should exercise its discretion to grant an alien permanent residency.  See Orlov v. Howard, 523 F. Supp. 2d 30 (D.D.C. 2007); Luo v. Keisler, 521 F. Supp. 2d 72 (D.D.C. 2007); Wang v. Chertoff, 2007 WL 4139475, at *5 (N.D. Ga. Oct. 30, 2007) (noting that its holding was in line with the majority of district courts).

Many of Plaintiff's arguments concern a hypothetical situation in which USCIS refuses to process an adjustment of status application, or to take any action in connection with that application.  However, this plainly is not such a case.  Instead, USCIS is processing Plaintiff's application, and is waiting to obtain information related to Plaintiff from the Federal Bureau of Investigation ("FBI") name check process.  See Declaration of Ethan Enzer ("Enzer Decl."), ¶¶ 7, 9 (MTD/MTT Exh. 1).  Therefore, this is a case in which the pace of USCIS's review of the application is inextricably intertwined with its substantive assessment of Plaintiff's eligibility for adjustment of status.  Even Plaintiff cannot dispute that USCIS has plenary discretion to grant or deny the application, and that its final ruling on the application cannot be reviewed in federal courts.  That discretion necessarily extends to USCIS's determination that it needs more time to complete its review of the eligibility issues present in this case.  The discretionary nature of that assessment, and of the adjudicative process as a whole, forecloses judicial review under the Immigration and Nationality Act, the APA, and the Mandamus Act.

## I.     SECTION 1252(A) OF THE IMMIGRATION AND NATIONALITY ACT FORBIDS REVIEW OF PLAINTIFF'S CLAIMS.

As numerous district courts have recognized, Section 1252(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a), deprives courts of jurisdiction over challenges to

the I-485 adjudication process.  See, e.g., Orlov, 523 F. Supp. 2d at 33-37; Luo, 521 F. Supp. 2d at 73-74 (granting motion to dismiss action to compel adjudication of plaintiffs' I-485s and citing cases from other districts reaching same conclusion); Sun v. Gonzales, No. 07-504, Order (D.D.C. Dec. 10, 2007) (See MTD/MTT Exh. 3); Grinberg v. Swacina, 478 F. Supp. 2d 1350 (S.D. Fla. 2007); Wang, 2007 WL 4139475, at *5 (dismissing for lack of jurisdiction and citing cases from other districts reaching the same conclusion); Safadi v. Howard, 466 F. Supp. 2d 696 (E.D.Va. 2006); Defendants' Motion to Dismiss or in the Alternative to Transfer ("MTD/MTT") at 10-14 (analyzing statutory language and citing cases from other districts).  Section 1255(a) of the INA provides that the "status of an alien… *may* be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence."  8 U.S.C. § 1255(a) (emphasis added).[3]  Section 1252(a) expressly withdraws judicial review of all discretionary USCIS actions or decisions concerning adjustment applications and other immigration matters.  8 U.S.C. § 1252(a)(2)(B)(ii).  Plaintiff seeks judicial review of USCIS's decision to have the FBI determine whether any issues that may arise from a check of Plaintiff's given birth name require further review, and asks the Court to issue an order forcing Defendants to preclude them from reviewing any possible issues and complete the adjudication.  See Complaint.  It follows that section 1252(a)'s proscription against judicial review of any discretionary "act" or "decision" forecloses review of Plaintiff's claims.

Plaintiff advocates an exceedingly narrow interpretation of Section 1252(a)(2)(B), and contends that this case does not involve a matter within USCIS's discretion.  Plaintiff also

---

3.  The Attorney General delegated that authority to USCIS, a component of the Department of Homeland Security.

ignores the evidence that USCIS is actively coordinating the adjudication of his application, and

suggests that this case involves a refusal to adjudicate or process the application.  Finally,

Plaintiff argues that the Court should apply a presumption in favor of judicial review.  Those

arguments lack merit.

     **A.**     **Plaintiff's Arguments Rest on an Incorrect Interpretation of Section 1252(a)(2)(B).**

          **1.**     **Congress Has Imposed No Limits on USCIS's Ability to Investigate an Alien's Eligibility for Permanent Resident Status Thoroughly.**

Plaintiff places undue emphasis on the phrase "specified. . . to be in the discretion of the

Attorney General," 8 U.S.C. § 1252(a)(2)(B)(ii), and contends that Section 1252(a)(2)(B)(ii) is

inapplicable because the text of Section 1255 does not provide USCIS with "the discretion not to

decide applications at all."  Opp. at 17.  However, the D.C. Circuit has declined to read Section

1252(a)(2)(B)(ii) so narrowly.  See Zhu v. Gonzales, 411 F.3d 292, 294-95 (D.C. Cir. 2005)

(rejecting argument that 1252(a)(2)(B)(ii) applies only to decisions which Congress has

explicitly stated are matters of "discretion").

Section 1255 is worded broadly, and permits the Attorney General "in his discretion and

under such regulations as he may prescribe," to adjust the status of an alien "to that of an alien

lawfully admitted for permanent residence."  8 U.S.C. § 1255(a).  The explicit reference to

"discretion" and use of the word "may" confirm Congress's intent to grant plenary authority to

the Attorney General over adjustment applications.[4]  See Zhu, 411 F.3d at 295-96 (discussing

import of "may" and "discretion" when assessing scope of discretion granted by a statutory

provision); Mahaveer, Inc. v. Bushey, 2006 WL 1716723, at *3 (D.D.C. June 19, 2006).  When a

---

4.  See supra, n.3.

4

statute confers such broad discretion, the relevant question is whether there is language underlining withdrawing and/or expressly limiting that discretion — not whether there is additional language specifically articulating each type of decision encompassed within that grant of discretion. See Zhu, 411 F.3d at 296 (noting that plaintiffs could not point to language indicating that the decision being challenged had been withdrawn from the Attorney General's discretion).

Thus, under Zhu, the presumption is that DHS and USCIS have discretion over all aspects of the adjustment of status process unless the text of Section 1252(a)(2)(B)(ii) specifically constrains that discretion.[5] As explained supra, legislative silence would support a ruling that the Court lacks jurisdiction, not that jurisdiction is present. Nothing in Section 1252(a)(2)(B)(ii) purports to dictate the pace at which USCIS conducts its adjudications. Nor does the statute limit USCIS's ability to devote time to thoroughly examine issues affecting an alien's eligibility, such as those that require USCIS to conduct further investigation beyond that of the standard FBI name check. In sum, "Congress clearly intended to leave the pace of processing adjustment applications within the discretion of USCIS." Sun, Order at 3 (MTD/MTT Exh. 3); see Orlov, 523 F. Supp. 2d at 35; Luo, 521 F. Supp. 2d at 74.

### 2.   USCIS's Ongoing review of Plaintiff's Eligibility and the Remainder of the Adjudicative Process Constitute Agency "Action."

Plaintiff also argues that there has been no "decision" or "action" in this case, and that Section 1252(a)(2)(B)(ii) — which bars judicial review of any discretionary "action" or "decision" — is therefore inapplicable. Opp. at 16-18, 20, 21. That argument is founded upon an unduly narrow definition of the word "action," which is inconsistent with the term's ordinary

---

5. Although district judges in other jurisdictions have interpreted Section 1252(a)(2)(B)(ii) differently, see Opp. at 14, Zhu is the law of this Circuit and precludes reliance on those decisions.

meaning and its usage in the APA.  It also fails to account for the fact that USCIS has been, and

still is, actively reviewing Plaintiff's application.

        The D.C. Circuit has endorsed reference to the ordinary usage of a word as a starting

point for interpreting statutory language, and has held that courts may presume that Congress

intended the common usage to apply.  See Inner City Broad. Corp. v. Sanders, 733 F.2d 154, 158

(D.C. Cir.1984).  The "plain meaning of the word action . . . [is] 'an act or series of acts.'"

Orlov, 523 F. Supp. 2d at 35 (quoting Safadi, 566 F. Supp. at 699 (quoting Black's Law

Dictionary)).  The Administrative Procedure Act is even broader, and includes "failure to act" as

part of the definition of "agency action."  5 U.S.C. § 551(13); Orlov, 523 F. Supp. 2d at 37

(noting same).  Thus, given the absence of any language or legislative history to the contrary,

Section 1252(a)(2)(B)(ii)'s reference to discretionary "action" should be read as encompassing

the full adjudicative process.  It follows that the portions of the process in which USCIS is

actively reviewing eligibility issues constitute agency "action" to the same extent as other

portions of the process.  See Orlov, 523 F. Supp. 2d at 35-36 (concluding that agency action

included USCIS's decision to wait for results of background checks prior to completing

adjudication); Li v. Chertoff, 482 F. Supp. 2d 1172, 1178 (S.D. Cal.2007) (concluding that "as

long as USCIS is making reasonable efforts to complete the adjudication, the pace required to

complete that process is committed to USCIS's discretion"); Grinberg v. Swacina, 478 F. Supp.

2d 1350, 1352 (S.D. Fla.2007) (finding initiation of background checks was action).

        Some of the cases on which Plaintiff relies conclude that only the final ruling on an

application constitutes agency "action."   That narrow reading of the term "action" would render

portions of section 1252(a)(2)(B)(ii) superfluous.  See Luo, 521 F. Supp. 2d at 73-74; Orlov, 523

F. Supp. 2d at 36; <u>Safadi</u>, 466 F. Supp. 2d at 699.  Plaintiff does not appear to dispute that the final ruling would be a "decision."  <u>See</u> Opp. at 13, 18.  If those final rulings were the only "actions" that are insulated from review, there would be no need to include the term "action" in section 1252(a)(2)(B)(ii) in addition to the term "decision."  <u>See</u> <u>Orlov</u>, 523 F. Supp. 2d at 36.

Moreover, Plaintiff's allegation that there has been no action on the case is factually incorrect.  <u>See</u> Opp. at 16-17, 20, 21.  The Field Office Director of the Hartford, Connecticut Field Office of USCIS has explained the status of the adjudication in his sworn affidavit, which is entitled to a presumption of good faith and has not been rebutted by Plaintiff.  <u>See</u> <u>Calton v. Babbitt</u>, 147 F. Supp. 2d 4, 8 (D.D.C. 2001) (agency testimony afforded a presumption of good faith).  USCIS last received a response to the FBI fingerprint checks on or around May 29, 2007. <u>See</u> Declaration of Ethan Enzer ("Enzer Decl.") (MTD/MTT Exh. 1), ¶ 6.  USCIS has also performed preliminary checks against the DHS-managed Interagency Border Inspection System (IBIS), which contains records and watch list information from over twenty federal law enforcement and intelligence agencies.  <u>See</u> <u>id.</u> ¶ 4.  IBIS checks were first initiated on Plaintiff on February 13, 2008 and are valid for six months.  <u>Id.</u> ¶ 6.  If a final decision regarding Plaintiff's application is not reached by August 12, 2008, a new IBIS check will be necessary. <u>Id.</u>  USCIS electronically submitted a name check request for "Matthew Chang" to the FBI on or around March 10, 2005.  <u>See</u> <u>id.</u> ¶ 7.  USCIS interviewed Plaintiff on his application for adjustment of status on February 13, 2008.  Id. ¶ 8.  On February 13, 2008, and April 11, 2008, USCIS electronically submitted a name check request for "Jin Woo Chang" to the FBI.  <u>See</u> <u>id.</u> ¶ 9.  Therefore, this is not a case in which Defendants have intentionally discarded or otherwise refused to review or process an application.  The Court need not decide whether section

7

1252(a)(2)(B)(ii) would permit judicial review in those extreme circumstances in order to

determine whether jurisdiction exists in this case.

> **B.      No Presumption of Judicial Review Attaches to this Case.**
>
> > **1.      There is No Presumption of Review for Matters of National Security or Foreign Affairs**

Plaintiff's suggestion that this Court should apply a presumption in favor of judicial

review in this case, Opp. at 2, conflicts with D.C. Circuit precedent.  The D.C. Circuit has

recognized that "[w]hen it comes to matters touching on national security or foreign affairs . . .

the presumption of review runs aground."  Bruno v. Albright, 197 F.3d 1153, 1162 (D.C. Cir.

1999) (dismissing challenge to denial of visa for lack of jurisdiction).  Although the Court made

that statement in connection with a visa application, the same principles apply here.

This case clearly involves "matters touching on national security or foreign affairs."

Bruno, 197 F.3d at 1162.  For each applicant who applies for an adjustment of status, "USCIS

conducts several forms of security checks to ensure that the alien is eligible for the immigration

benefit and is not a risk to national security or public safety."  Enzer Decl. ¶ 4.  Of these, the FBI

name check "runs the alien's name against investigative and other databases of the FBI

containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS[,]"

which reveal criminal and suspected terrorist-related activity.  Id.  In many cases, adverse

information related to an applicant or beneficiary that is obtained through a security check

requires further vetting by USCIS.  Id. at ¶ 5.  In the instant case, USCIS has not yet received the

results of the name check to be able to determine whether further vetting is required.  Enzer

Decl. ¶¶ 7, 9.

Any sensitive issue — which would be investigated thoroughly — is the type of foreign

policy and national security matter that traditionally has been entrusted to the executive branch.
See generally Bruno, 197 F.3d at 1160.  The Supreme Court has long recognized that "'any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations . . . [and] are so exclusively entrusted to the political branches of government as to be largely immune from judicial interference.'"  Id. at 1159 (quoting Harisiades v. Shaughnessy, 342 U.S. 580, 588-89 (1952)); see generally Orlov, 523 F. Supp. 2d at 36 (acknowledging "the general rule that courts should refrain from interfering with matters of immigration and national security").

Plaintiff's reliance on I.N.S. v. St. Cyr, 533 U.S. 289, 298 (2001) is misplaced.  In that case, the Supreme Court referenced the general presumption that administrative action is reviewable, but centered its analysis on the "longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction."  Id.; see also id. at 299-308 (discussing constitutional and historical significance of the writ).  Unlike St. Cyr, this case does not involve the writ of habeas corpus.  Accordingly, even if the constitutional protections that preserve habeas review may in some cases trump the presumption against judicial review of national security-related immigration matters, those protections are inapposite in this civil action.

## 2.     Cardinal Rules of Statutory Interpretation Support the Agency's Position

Plaintiff argues that certain principles of statutory construction argue in favor of narrowly construing § 1252(a)(2)(B)(ii) to mean that courts only lack jurisdiction to consider whether to grant or deny an individual claim, and not "the discretion not to decide applications at all."  Opp. at 17.  Yet the principles upon which he relies do not compel this unjustifiably narrow interpretation. Rather, two cardinal rules of statutory construction overlooked by Plaintiff

demonstrate that the Court lacks jurisdiction to review more than merely the final step in the adjudicative process.

Plaintiff draws on three principles of statutory construction cited in <u>Liu v. Novak</u>, 509 F.Supp.2d 1 (D.D.C. 2007).  The first canon, that "Congress's intent to limit federal jurisdiction must be 'clear and convincing' in order to preclude judicial review" <u>Id.</u> at 7 (<u>quoting Board of Governors of Federal Reserve System v. MCom Financial, Inc.,</u> 502 U.S. 32 (1991)), is satisfied here because the text of a statute may itself provide such evidence of Congress's intent to deprive the Court of jurisdiction.  <u>See e.g.</u>, <u>Board of Governors</u>, 502 U.S. at 44 ("[I]n this case the statute provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings."). As explained in Defendant's opening memorandum, the text of § 1252(a)(2)(B)(ii) plainly divests the Court of jurisdiction over the discretionary adjustment of status process.  <u>See</u> 8 U.S.C. §1252(a)(2)(B)(ii) ("Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . (ii) any other decision or action" that is specified to be in the discretion of the Attorney General).  Furthermore, the case Plaintiff cites to assert that this Court has jurisdiction to compel a final decision by USCIS is inapposite here because it explains that "mandamus may issue to an *inferior judicial tribunal* if it refuses to take jurisdiction…."  <u>Work v. United States</u>, 267 U.S. 175, 185 (1925) (emphasis added).  However, USCIS, an executive agency, is not a judicial tribunal.

The second principle, that there is a "strong presumption in favor of judicial review of administrative" action, <u>Liu</u>, 509 F.Supp.2d at 7 (quoting <u>INS v. St. Cyr</u>, 533 U.S. 289, 298 (2001)), is simply a presumption that, "like all presumptions used in interpreting statutes, may be

overcome by specific language or specific legislative history that is a reliable indicator of congressional intent," Block v. Community Nutrition Institute, 467 U.S. 340, 349 (1984). The presumption is overcome here by the very specific, jurisdiction-depriving language of 1252(a)(2)(B)(ii). As this Circuit made clear, "[w]hen it comes to matters touching on national security or foreign affairs . . . the presumption of review runs aground." Bruno, 197 F.3d at 1162. Finally, the third rule of statutory construction cited by Plaintiff, that "courts construe ambiguities in deportation statutes in favor of the alien," Liu, 509 F.Supp.2d at 7 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987)), lacks relevance in this case because Mr. Chang is not in removal proceedings.

Other canons of construction dismissed by Plaintiff further support Defendant's argument. Plaintiff first sets aside the critically important "plain meaning" rule. See Orlov, 523 F.Supp.2d at 35 (citing Escobar v. U.S. Immigration & Naturalization Serv., 935 F.2d 650, 652-53 (4th Cir. 1991) ("The first step in the interpretive effort is to ascertain whether the language in issue has a plain and ordinary meaning, for there is a strong presumption 'that the legislative purpose is expressed by the ordinary meaning of the [statutory] words used.'") (quoting American Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982)). As the Supreme Court has frequently reiterated, "[i]n a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992) (citing Demarest v. Manspeaker, 498 U.S. 184, 190 (1991)). Here, the plain meaning of § 1252(a)(2)(B)(ii) deprives the Court of jurisdiction over Plaintiff's claims. As explained more fully in Defendant's MTD/MTT, the

Agency has made an intermediate "decision" that it will wait 180 days for the FBI to complete name checks before it will make a final decision regarding Plaintiff's application. See MTD/MTT at 13. Because the authority for these decisions and actions is specified under 8 U.S.C. § 1255(a) to be within the discretion of the Attorney General, § 1252(a)(2)(B)(ii) – by its plain meaning – divests the Court of jurisdiction over Plaintiff's claims. See Orlov, 523 F.Supp.2d at 36 (finding that "because the adjustment process, including the pace of processing applications, falls within the discretion of USCIS, and because the pace of processing applications, including completing security checks, constitutes an 'action' under the plain meaning of the word, judicial review of plaintiff's claim is precluded by § 1252(a)(2)(B)(ii)") (emphasis added).

## II. NEITHER THE MANDAMUS ACT NOR THE ADMINSITRATIVE PROCEDURE ACT PROVIDES SUBJECT MATTER JURISDICTION TO REVIEW PLAINTIFF'S CLAIMS.

As Plaintiff admits, there is no mandamus jurisdiction unless Defendants have a clear duty to act and Plaintiff establishes a "clear right to relief." In re Medicare Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005); see Opp. at 9. The Mandamus Act does not provide a remedy where, as here, the act that the plaintiff seeks to compel is discretionary. See Heckler v. Ringer, 466 U.S. 602, 616 (1984). Even when those criteria have been met, "a court may grant mandamus relief only when it finds 'compelling equitable grounds.'" In re Medicare Reimbursement Litigation, 414 F.3d at 10.

Defendants have no "clear duty" to complete adjudication of Plaintiff's adjustment application while questions remain concerning his eligibility for the benefit. Nor do they have any clear duty to cut short their review and assessment of adverse information that may arise

from Plaintiff's FBI name check.  Likewise, Plaintiff has no "clear right" to such relief.  As explained supra, USCIS has discretion over the entire adjudication process, including the pace at which the adjudication is completed.  Plaintiff bears the burden of persuading USCIS to exercise its discretion in his favor, and has no entitlement to permanent residency status.  See Elkins v. Moreno, 435 U.S. 647, 667 (1978) (noting "adjustment of status is a matter of grace, not right"); Randall v. Meese, 854 F.2d 472, 474 (D.C. Cir. 1988).  In sum, because the timing of the adjudication of Plaintiff's adjustment of status application is not "subject to positive command, plainly described and free from doubt," Plaintiff cannot invoke mandamus jurisdiction.  Rahman v. McElroy, 884 F.Supp. 782, 787 (S.D.N.Y. 1995).

There is no Administrative Procedure Act ("APA") jurisdiction for similar reasons. Section 706(1), which permits review of complaints seeking to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), applies "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  Norton v. So. Utah Wilderness Alliance, 542 U.S. 51, 64 (2004) (emphasis in original).  Moreover, Congress expressly removed agency actions "committed to agency discretion by law" from the scope of the APA.  5 U.S.C. § 701(a)(2).  This Circuit has interpreted Section 701(a)(2) to mean that a "plenary" grant of discretion renders agency actions unreviewable under the APA. Secretary of Labor v. Twentymile Coal Co., 456 F.3d 151, 157 (D.C. Cir. 2006).  USCIS has "plenary" discretion to carefully review the eligibility issues which arise from Plaintiff's FBI name check because Congress has given it broad "discretion" over adjustment of status applications.  See Orlov, 523 F. Supp. 2d at 35-38.  That discretion precludes Plaintiff from

asserting an APA claim.[6]  See id. at 37; see also, e.g., Safadi, 466 F.Supp.2d at 700; Zheng v. Reno, 166 F. Supp.2d 875, 878-79 (S.D.N.Y. 2001); Karan v. McElroy, 2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003) ("[B]ecause decisions regarding the plaintiff's immigration status are committed to the discretion of the INS, this Court lacks the authority under . . . the APA to grant the relief the plaintiff seeks."); see also Rahman, 884 F.Supp. at 787-88.

Plaintiff's assertion that the APA, in combination with 28 U.S.C. § 1331, gives USCIS a clear non-discretionary duty to act which is sufficient to trigger mandamus and APA jurisdiction is circular, and contrary to Norton v. Southern Utah Wilderness Alliance.  In Norton, the Supreme Court addressed, inter alia, the language in 5 U.S.C. §706(1), which provides that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 524 U.S. at 62.  Accordingly, this circuit has wondered how "the government [can] suggest that a congressionally created right can be nullified by government inaction."  Kaufman v. Mukasey, --- F.3d. ---, 2008 WL 1932774, *4 (D.C. Cir.2008).  However, the Norton Court noted, with emphasis, that "the only agency action that can be compelled under the APA is action legally required."  Norton, 524 U.S. at 63 (emphasis in original).  The Court reasoned that the APA simply extended the traditional practice, prior to its passage, of achieving judicial review through a writ of mandamus, and that the mandamus remedy was normally confined to enforcement of "'a specific, unequivocal command.'"  Id. (quoting ICC v. New York, N.H. & H.R. Co., 287 U.S. 178, 204 (1932) and citing Kendall v. United States ex rel. Stokes, 12 Pet. 524, 613 (1838) ("precise, definite act . . . about which [an official] had no discretion whatsoever")); accord

---

6. Section 701(a) of the APA, which "withdraws [an APA] cause of action" to the extent another statute "precludes judicial review," also prevents Plaintiff from raising an APA challenge.  Block v. Community Nutrition Inst., 467 U.S. 340, 345 (1984).

14

<u>Vermont Yankee Nuclear Power Corp. v. Nat. Res. Defense Council, Inc.</u>, 435 U.S. 519, 546 (1978) (§706[1] empowers a court only to compel an agency "to perform a ministerial or non-discretionary act").  The Court added that "a delay cannot be unreasonable with respect to action that is not required."  <u>Norton</u>, 524 U.S. at 63 n.1.

In <u>Kaufman</u>, this Circuit remanded a case in which USCIS refused to complete the plaintiff's renunciation of U.S. citizenship, in part because the applicable statute requires that "a citizen shall lose his nationality upon making a formal renunciation request of the Attorney General 'whenever the United States shall be in a state of war and the Attorney General *shall* approve such renunciation as not contrary to the interests of national defense.'"  <u>Kaufman</u>, 2008 WL 1932774 at *1 (quoting 8 U.S.C. § 1481(a)(6)) (emphasis added).  Conversely, section 1331, which Plaintiff cites because it grants a federal district court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States[,]" does not require any specific action on the part of USCIS.  <u>See</u> 28 U.S.C. § 1331.

In sum, the APA does not provide a remedy unless Plaintiff can point to some independent statute or regulation that gives USCIS a mandatory non-discretionary duty to complete the adjudication at this time. As explained <u>supra</u>, there is no such regulation or statute, and USCIS is not "legally required" to complete the adjudication while name check or eligibility issues remain pending, or to cut short its review and assessment of those issues.

## III.    THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF CONNECTICUT.

If every district court case involving an agency whose headquarters are located in Washington, D.C. were heard in this District, this Court's docket would quickly become unmanageable.  Accordingly, the D.C. Circuit closely scrutinizes venue arguments based solely

on federal agency defendants' presence in the District of Columbia.  See Cameron, 983 F.2d at

256.  Even when such defendants' presence makes venue technically proper in this District,

courts frequently invoke their discretionary transfer authority pursuant to 28 U.S.C. § 1404(a)

and transfer cases to districts with a closer nexus to the parties' dispute.  See, e.g., Abusadeh v.

Chertoff, 2007 WL 2111036, at *6-*9 (D.D.C. July 23, 2007) (transferring mandamus action

seeking adjudication of adjustment of status application to Southern District of Texas because

that was where the application was being adjudicated); Rosales v. United States, 477 F. Supp. 2d

213, 215-17 (D.D.C. 2007) (transferring case against federal agency to district in which the

challenged events took place); Southern Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d

82, 886-89 (D.D.C. 2005) (concluding environmental case should be transferred to Utah where

D.C. officials only set general policies and did not make specific decisions being appealed);

Joyner v. District of Columbia, 267 F. Supp. 2d 15, 20-21 (D.D.C. 2003) (holding that the case's

only connection to Washington, D.C. was the situs of named federal government defendants and

transferring to a district with which the case had several connections).

     Section 1404(a) permits the Court to transfer this case to "any other district or division

where it might have been brought" for the "convenience of parties and witnesses, in the interest

of justice."  28 U.S.C. § 1404(a).  A threshold question is whether the case could have been

brought in the district to which transfer is sought.  Stewart Organization v. Ricoh Corp., 487 U.S.

22, 29 (1988) (citing Van Dusen v. Barrack, 376 U.S. 612, 613 (1964)).  Plaintiff contends that

this action could not have been brought in the District of Connecticut.  See Opp. at 23-27.

Courts then conduct a case-by-case analysis and balance the private interests of the parties with

public interests such as efficiency and fairness.  See id. at 7; Abusadeh, 2007 WL 2111036, at

\*3.  Both the private and public interests favor transfer to the District of Connecticut.  Therefore, this case should be transferred to that court.

**A.    The District of Connecticut Is A More Appropriate Forum Because That is Where Plaintiff's Adjustment of Status Application is Being Adjudicated.**

Plaintiff's choice of forum deserves little or no deference because he is not a Washington, D.C. resident, and because this District "lacks meaningful ties to the controversy."  Southern Utah Wilderness Alliance, 315 F. Supp. 2d at 86; see Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 24 (D.D.C. 2002) (deference lessened when the forum chosen is not the plaintiff's home forum); Abusadeh, 2007 WL 2111036, at \*8 ("[i]t is therefore clear that Plaintiff's choice of forum is entitled to significantly less than ordinary deference in light of the tangential connection between Plaintiff's complaint and Washington, D.C.").  As explained in Defendants' MTD/MTT and the declaration submitted therewith, federal officials in Hartford, Connecticut are responsible for adjudicating Chang's application for adjustment of status, and will make the final decision regarding that application.  See MTD/MTT at 24; See Enzer Decl. ¶ 2.  Given that this case concerns decisions made at the Hartford Field Office, the District in which that field office is located is the appropriate forum for this suit.  See, e.g., Abusadeh, 2007 WL 2111036, at \*6-\*9 (transferring to district in which USCIS field office was located); Sierra Club v. Flowers, 276 F. Supp. 62, 67-68 (D.D.C. 2003) (transferring case because federal officials in Florida made the relevant decision and officials in Washington, D.C. did not play an "active or significant" role in the decision-making process); Fayyaz v. Dep't of Homeland Security, No. 06-2016 (D.D.C. Oct. 25, 2007) (unpublished Order) (transferring mandamus action concerning I-485 to the Southern District of Texas because that is where plaintiffs resided and the district in which the USCIS office with jurisdiction over their applications was located) (Exh. 4, attached to

Defendants' MTD/MTT).

The District of Connecticut has a more significant interest in this case than this Court. There is a local interest in resolving controversies where the relevant decisions are made. That interest applies to "controversies requiring judicial review of an administrative decision" to the same extent that it applies to cases involving real property or environmental issues. <u>Abusadeh</u>, 2007 WL 2111036, at * 8 (quoting <u>Sierra Club</u>, 276 F. Supp. 2d at 70). The administrative decisions at issue in this case are being made in Hartford, Connecticut.

**B.      The Remaining Public and Private Interest Factors Favor Transfer.**

The remaining factors of the Section 1404 analysis also support transfer, for the reasons set forth in Defendants' motion. In 2007, the District of Connecticut had substantially fewer pending cases than this Court (2,822 in the District of Connecticut and 3,936 in this Court). <u>See</u> MTD/MTT Exh. 6 (spreadsheets showing courts' caseload). Also, the District of Connecticut is as familiar with the applicable federal law as this Court. Nevertheless, Plaintiff claims that a transfer of venue to the District of Connecticut would "deprive Plaintiff of the representation of his choice[,] because Plaintiff's legal counsel is not admitted to practice before the U.S. District Court for the District of Connecticut." Opp. at 26-27. However, as Plaintiff admits, Plaintiff's counsel could seek *pro hac vice* status in order to represent his client in another district, see <u>id.</u>, and this Court has recognized that finding local representation can be a viable option. <u>Environmental Defense v. U.S. Dept. of Transp.</u>, Slip Copy, 2007 WL 1490478 (D.D.C.2007) (finding no reason to believe that Plaintiff would have difficulty retaining counsel for the limited

18

purpose of acting as local counsel).  For all those reasons, Defendants request that the Court

exercise its discretion to transfer this action to the District of Connecticut.[7]

## IV.    IN THE ALTENRATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF VERMONT.

As Plaintiff notes in his Opposition, Plaintiff's application for adjustment of status was

transferred to the USCIS Hartford Field Office on January 29, 2008, after Plaintiff filed his

Complaint in this Court.  See Opp. at 24; MTD/MTT at 7; Enzer Decl. ¶ 3.  At the time this case

was filed, Plaintiff's application was being processed at the Vermont Service Center in St.

Albans, Vermont. See Compl. ¶ 10.  For the purposes of 28 U.S.C. 1404(a), discussed *infra*,

Vermont is a venue in which this case "may have been brought[,]" because it is where at least a

substantial part of the events took place before the Complaint was filed.

The private and public interests favor transfer to the District of Vermont, as they had with

Connecticut, for most of the same reasons stated above.  The District of Vermont is also a better

district to which the Court may transfer this case because, in 2007, that district had substantially

fewer pending cases than this Court (480 in the District of Vermont and 3,936 in this Court).

Compare Reply Exh. 1 with MTD/MTT Exh. 6 (spreadsheets showing courts' caseload).  It, too,

is as familiar with the applicable federal law as this Court.  For all those reasons, Defendants

request that the Court exercise its discretion to transfer this action to the District of Vermont.

_____

7. Moreover, Defendants generally request that immigration mandamus actions concerning applications being adjudicated by USCIS field offices outside of the Washington, D.C. area be transferred to the district court with jurisdiction over the applicable field office.  See Abusadeh, 2007 WL 2111036, at *1-*6 (transferring to the Southern District of Texas); No. 07-662 (D.D.C.) at Dkt. Entry 12 (seeking transfer to the Northern District of Texas); No. 07-1601 (D.D.C.) at Dkt. Entry 2 (same).

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Defendants' Motion to Dismiss or in the Alternative to Transfer, Defendants respectfully request that the Court GRANT Defendants' motion to dismiss and DISMISS the case for lack of jurisdiction.

Dated: June 5, 2008.                    Respectfully Submitted,


    /s/ _____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


    /s/ _____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


    /s/ _____
BRANDON L. LOWY
Special Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
(202) 307-0364

Attorneys for Defendants

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **VERMONT** | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | Numerical Standing | |
| OVERALL CASELOAD STATISTICS | Filings* | 478 | 455 | 575 | 582 | 557 | 564 | U.S. | Circuit |
| | Terminations | 486 | 526 | 577 | 492 | 518 | 560 | | |
| | Pending | 480 | 490 | 553 | 552 | 536 | 549 | | |
| | % Change in Total Filings — Over Last Year | | 5.1 | | | | | 24 | 2 |
| | % Change in Total Filings — Over Earlier Years | | | -16.9 | -17.9 | -14.2 | -15.3 | 71 | 5 |
| Number of Judgeships | | 2 | 2 | 2 | 2 | 2 | 2 | | |
| Vacant Judgeship Months** | | .0 | .0 | .0 | .0 | 9.0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 240 | 228 | 288 | 292 | 279 | 282 | 85 | 6 |
| | FILINGS — Civil | 144 | 138 | 196 | 181 | 186 | 174 | 88 | 6 |
| | FILINGS — Criminal Felony | 77 | 62 | 75 | 93 | 74 | 88 | 38 | 2 |
| | FILINGS — Supervised Release Hearings** | 19 | 28 | 17 | 18 | 19 | 20 | 59 | 5 |
| | Pending Cases | 240 | 245 | 277 | 276 | 268 | 275 | 81 | 6 |
| | Weighted Filings** | 254 | 216 | 290 | 317 | 322 | 339 | 85 | 6 |
| | Terminations | 243 | 263 | 289 | 246 | 259 | 280 | 84 | 6 |
| | Trials Completed | 12 | 12 | 11 | 16 | 20 | 13 | 79 | 4 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 14.3 | 14.7 | 11.7 | 11.8 | 11.0 | 10.6 | 88 | 4 |
| | From Filing to Disposition — Civil** | 8.0 | 8.8 | 7.3 | 8.0 | 7.5 | 9.0 | 28 | 1 |
| | From Filing to Trial** (Civil Only) | 19.0 | - | - | 36.0 | 22.0 | 24.5 | 18 | 1 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 16 | 26 | 11 | 8 | 6 | 1 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 6.1 | 8.3 | 3.1 | 2.4 | 1.7 | .3 | 61 | 1 |
| | Average Number of Felony Defendants Filed Per Case | 1.3 | 1.3 | 1.5 | 1.7 | 1.8 | 1.7 | | |
| | Jurors — Avg. Present for Jury Selection | 32.64 | 27.43 | 87.54 | 31.67 | 41.47 | 40.25 | | |
| | Jurors — Percent Not Selected or Challenged | 44.4 | 36.2 | 65.7 | 32.4 | 35.9 | 54.2 | | |

**2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE**

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 288 | 25 | 6 | 57 | 4 | 12 | 13 | 42 | 44 | 16 | 39 | 1 | 29 |
| Criminal* | 152 | 15 | 40 | 29 | 28 | 13 | 8 | 9 | - | 3 | 2 | 1 | 4 |

\*   Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."