UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

)
MATTHEW J. CHANG,                              )
                                               )
Plaintiff,                                     )
                                               )
v.                                             )          Civil Action No. 07-2139 (RCL)
                                               )
MICHAEL CHERTOFF,                              )
Secretary, Homeland Security, et al.,          )
Defendants.                                    )
                                               )

---

## DEFENDANTS' ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendants have moved that the case be dismissed for lack of subject matter jurisdiction

or failure to state a claim or, in the alternative, transferred to the United States District Court for

the Districts of Connecticut or Vermont.  See R.[1] 11, 21.  Defendants further move in the

alternative that the Court award summary judgment to Defendants, pursuant to Federal Rule of

Civil Procedure 56, if the Court denies Defendants' motion to dismiss.  A supporting

memorandum, statement of material facts, and proposed order are submitted herewith.

Respectfully submitted,


/s/ _____ _ _____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/ _____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

---

[1] "R." followed by a number refers to the document identified at that number on this Court's docket
entries.

/s/_____
BRANDON L. LOWY,
Special Assistant United States Attorney
555 Fourth St., NW
Washington, D.C.  20530
Phone: (202) 307-0364
Brandon.Lowy@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MATTHEW J. CHANG,                       )
                                        )
Plaintiff,                              )
                                        )
v.                                      )          Civil Action No. 07-2139 (RCL)
                                        )
MICHAEL CHERTOFF,                       )
Secretary, Homeland Security, et al.,   )
                                        )
Defendants.                             )
_____)

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' ALTERNATIVE MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## SUMMARY

Despite the good faith efforts of Defendants United States Citizenship and Immigration Services ("USCIS") and the Federal Bureau of Investigation ("FBI"), the adjustment of status application filed by Plaintiff Matthew Chang remains pending. That application seeks lawful permanent resident status, memorialized in what is commonly known as a green card. USCIS has determined that, in light of national security interests, it cannot complete its adjudication of an adjustment of status application until all of the security checks — including the FBI's security investigation and background check — have been initiated, and until the FBI's background check is complete or has been pending for more than 180 days. The FBI — which processed over 4 million name checks in Fiscal Year 2007 alone — has determined that accurate and thorough background checks are a priority which cannot be sacrificed for speed.

Plaintiff asks this Court to disturb those judgments and issue an order compelling Defendants to complete their adjudication of Plaintiff's pending application for lawful permanent

resident status.  However, Plaintiff is not entitled to the extraordinary remedy of mandamus, and

Defendants' actions do not constitute "unreasonable delay" in violation of Section 706(1) of the

Administrative Procedures Act.  Instead, the Court should defer to Defendants' judgments

concerning these security concerns, and respect the FBI's judgments concerning how to allocate

the resources available to process background checks.  Prioritizing Plaintiff's application over

others which have been pending for even longer would not serve the interests of the agencies or

other applicants.  It would only reduce the resources available to process other applications and

background checks, moving other individuals' applications and background checks farther back

in the queue.  The Court should therefore grant Defendants' alternative motion for summary

judgment, and deny Plaintiff's motion for summary judgment.

## BACKGROUND

Defendants discussed the statutory, regulatory, and factual background in detail in their

Motion to Dismiss, which is incorporated herein by reference.  See R.[1] 11, 21.  This case

concerns Plaintiff's pending I-485 application to register permanent residence or adjust status.

See Compl. ¶ 1.  Defendant USCIS has not completed its adjudication of that application because

the mandatory national security investigations and background checks remain pending and have

been pending less than 180 days.  See R. 11 Exh. 1 ("Enzer Decl."), ¶¶ 7, 9.

## STANDARD OF REVIEW

Under Rule 56, summary judgment is required when the pleadings and evidence

demonstrate that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).   A genuine issue of material fact is

---

[1] "R." followed by a number refers to the document identified at that number on this Court's docket entries.

one that would change the outcome of the litigation.  See Anderson v. Liberty Lobby, Inc, 477

U.S. 242, 243 (1986).  While all evidence and the inferences drawn therefrom must be

considered in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986), summary judgment should be granted if the

moving party submits "affirmative evidence that negates an essential element of the nonmoving

party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish

an essential element of the nonmoving party's claim."  Celotex, 477 U.S at 331.  The nonmoving

party has the burden of establishing more than the "mere existence of a scintilla of evidence"

demonstrating a genuine issue in dispute for purposes of defeating the moving party's motion.

See Lester v. Natsios, 290 F. Supp.2d 11, 19-20 (D.D.C.2003), citing Anderson v. Liberty

Lobby, Inc., 477 U.S. at 255.  "[M]atters of law rather than of fact" may be presented for

summary judgment.  Douglas v. First Nat'l Realty Corp., 437 F.2d 666, 669 (D.C. Cir. 1970).

## ARGUMENT

## I.    PLAINTIFF CANNOT ESTABLISH MANDAMUS JURISDICTION OR A *PRIMA FACIE* CASE FOR MANDAMUS RELIEF.

A petition for a writ of mandamus is an extraordinary remedy that can be applied only in

exceptional circumstances.  To meet the mandamus standard, there must be: 1) a clear right to

relief; 2) a plainly defined and nondiscretionary duty on the part of the defendant; and 3) no

other adequate remedy available.  In re Medicare Reimbursement Litigation, 414 F.3d 7, 10

(D.C. Cir. 2005); see also Heckler v. Ringer, 466 U.S. 602, 616 (1984); Ganem v. Heckler, 746

F.2d. 844, 852 (D.C. Cir. 1984) (citing United States ex rel. Girard Trust Co. v. Helvering, 301

U.S. 540, 543 (1937)); Whittle v. Moschella, 756 F. Supp. 589, 596 (D. D.C. 1991).  The Court's

decision whether or not to exercise mandamus jurisdiction is discretionary.  Public Citizen v.

Kantor, 864 F. Supp. 208 (D.D.C.1994).

As explained in Defendants' motion to dismiss, Plaintiff cannot establish mandamus jurisdiction or state a claim for mandamus relief.  See R. 11.  The approval of an adjustment of status application and the timing of the FBI's security investigation and background checks are subject to agency discretion, and Plaintiff has no clear right to agency action.  See id.  Moreover, for the reasons discussed infra, agency action has not been unreasonably delayed in this case. See Part II, infra.  It follows that Plaintiff has no clear right to relief, and the Court should dismiss his complaint or enter summary judgment for Defendants.

## II.    DEFENDANTS' ADJUDICATION OF PLAINTIFF'S I-485 APPLICATION AND THEIR COMPLETION OF THE RELATED SECURITY INVESTIGATION AND BACKGROUND CHECKS ARE PROCEEDING ON A REASONABLE PACE.

As the D.C. Circuit has made clear, the issuance of equitable relief under APA section 706 "is an extraordinary remedy" and requires "extraordinary circumstances to be present before [courts] will interfere with an ongoing agency process."  In re: United Mine Workers of America Int'l Union, 190 F.3d 545, 549 (D.C. Cir.1999).  Accordingly, a finding of unreasonable delay is appropriate only upon a showing "that the agency has a duty to act and that it has 'unreasonably delayed' in discharging that duty."  In re American Rivers and Idaho Rivers United, 372 F.3d 413, 418 (D.C. Cir. 2004) (quoting (5 U.S.C. § 706(1)); 5 U.S.C. § 555(b); In re Bluewater Network, 234 F.3d 1305, 1315 (D.C. Cir. 2000).  Moreover, the Court must find that the delay is "egregious," Cobell v. Norton, 240 F.3d 1081, 1095 (D.C. Cir. 2001), and even then a court should order an agency to complete its consideration of an issue only in "the exceptionally rare cases."  In re Barr Labs Inc., 930 F.2d 72, 76 (D.C. Cir.1991).  Even "a finding that delay is unreasonable does not, alone, justify judicial intervention."  Cobell, 240 F.3d at 1096 (quoting In re Barr Labs., 930 F.2d at 75).  These principles arise out of courts' recognition that an administrative agency is entitled to substantial deference in establishing a timetable for

completing administrative action, and that the Court should properly be hesitant to upset an agency's priorities by ordering it to expedite one specific action, and thus give it precedence over others.  See Sierra Club v. Thomas, 828 F.2d 783, 794, 797 (D.C. Cir.1987).  As such, "respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities."  Barr Labs., 930 F.2d at 74.

Consistent with these principles, the D.C. Circuit has identified six factors courts should consider when reviewing claims that allege unreasonable agency delay:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

In re United Mine Workers of America Inter. Union, 190 F.3d at 547 (quoting Telecommunications Research & Action Ctr. v. FCC, 750 F.2d 70, 75-77, 79 (D.C. Cir. 1984) ("TRAC").  Significantly, under D.C. Circuit precedent, courts should not "grant relief, even when all the other factors considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (citing In re Barr Labs., Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)).  In this case, the TRAC factors favor Defendants.

**A.  Defendants' Actions Are Reasonable When Evaluated By Reference to a "Rule of Reason."**

Defendants' delay in completing the security investigation and background checks, and in completing the adjudication of Plaintiff's adjustment application, does not warrant judicial intervention.  As to the first two factors of the TRAC test, Congress has provided no mandatory statutory timetable for USCIS to adjudicate applications for adjustment of status under the INA. There are no federal statutes limiting the FBI's discretion to set the pace at which its security investigations and background checks can be completed.  Therefore, under TRAC, in evaluating whether agency delay constitutes an abuse of discretion, the Court must apply a "rule of reason" analysis.  See TRAC, 750 F.2d at 80.  As a result, the "rule of reason" analysis "turns on the facts of each particular case."  Midwest Gas Users Ass'n v. FERC, 833 F.2d 341, 359 (D.C. Cir. 1988).

Plaintiff asserts that USCIS itself determined a "reasonable time" to be 180 days when it distributed a policy memo on February 4, 2008 explaining that it will approve any applications that are "otherwise approvable" if the FBI has not yet returned to USCIS a name check result, and the name check has been pending more than 180 days.[2]  R. 12 at 10-11.  More important than the fact that this policy guidance does not amount to a Congressional dictate requiring USCIS to make a final decision within a particular timeframe is the fact that neither this nor any other similar policy memo existed as of the date that Plaintiff's name "Matthew Chang" was

---

[2] It has long been recognized that internal agency policy guidelines are not judicially enforceable in private civil suits, particularly when the policy does not emanate from a statutory mandate. See The Wilderness Soc. v. Norton, 434 F.3d 584, 595-597 (D.C. Cir.2006); In re Surface Mining, 627 F. 2d 1346, 1357 (D.C. Cir.1980). While the text of a policy on occasion uses mandatory language such as "will" and "must," this neither changes the character of the document nor makes it an enforceable regulation. See e.g., The Wilderness Soc., 434 F.3d at 595-597.

submitted to the FBI for a name check, March 10, 2005.[3]  In his Opposition to Defendants'

Motion to Dismiss and Alternative Motion to Transfer ("MTD/MTT"), Plaintiff scoffed at the

notion of needing "access to a time machine" in order to properly file his Complaint in this case

in the District of Connecticut.  See id. at 24.  Now, however, Plaintiff asserts that this court

should apply guidance from a USCIS policy memo from this year to determine a timetable for a

final decision on an application that had been filed more than three years ago.  Plaintiff cannot

now avail himself of the benefits of time travel in order to argue that Defendants have taken any

multiple of 180 days to adjudicate adjustment of status applications.

     Plaintiff focuses on the amount of time that has passed since his application was filed

(approximately 3 years).  See R. 13 at 17.  District Judge Sullivan also focused on the length of

time the application was pending when awarding summary judgment to the plaintiff in Liu v.

Novak.  See 509 F. Supp. 2d 1, 5-6 (D.D.C. 2007).  However, "this Circuit [has] made clear that

measuring the delay by years alone cannot establish unreasonable delay." Liberty Fund, Inc. v.

Chao, 394 F. Supp. 2d 105, 115 (D.D.C. 2005); see Mashpee Wampanoag Tribal Council, Inc.,

336 F.3d at 430 (reasonableness "cannot be decided in the abstract, by reference to some number

of months or years beyond which agency inaction is presumed to be unlawful").  Instead, the

relevant factors include "the complexity of the task at hand, the significance (and permanence) of

the outcome, and the resources available to the agency." Mashpee Wampanoag Tribal Council,

Inc., 336 F.3d at 430 (emphasis added).  Moreover where, as here, Congress has declined to

establish a specific timetable for agency action, the Court is "not free to ignore that judgment and

rewrite the statute to include a specific timetable." In re American Fed. of Govt. Employees

AFL-CIO, 837 F.2d 503, 506 (D.C. Cir. 1988).

---

[3] The issue regarding whether this policy applies retrotactively is irrelevant, as the FBI name check for the name "Matthew Chang" was completed on February 6, 2008, two days after the distribution of the USCIS policy memo.  See Declaration of Michael Cannon, ¶ 45 (R. 11 Exh. 2) ("Cannon Decl.")

In this case, Defendants' actions survive review under a "rule of reason" standard. Although Plaintiff is concerned only with his own application and security investigation, the heavy volume of similar applications that Defendants have before them cannot be ignored. See Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (noting that plaintiff's mandamus complaint and request for preliminary injunction ignored the volume of applications pending in New York and nationwide). Currently the USCIS Hartford Field Office has over 3,800 pending adjustment of status applications, and 175 of them are employment-based I-485 applications. Supplemental Declaration of Ethan Enzer ("Enzer Supp. Decl."), ¶ 8 (attached as Ex. 1 hereto). The FBI processed over 4 million background checks in Fiscal Year 2007. See Cannon Decl., ¶ 21. As of the end of Fiscal Year 2007, the FBI had over 402,800 pending background check requests, of which 197,900 involved adjustment of status applications; those pending background check requests represent only a fraction of the over 2.1 million background check requests that USCIS submitted to the FBI in that fiscal year. See id. ¶ 26. Moreover, the FBI has over 440,000 residual background checks which were among the 2.7 million background checks resubmitted to the FBI after September 11, 2001; those 440,000 background checks are still being processed because the FBI's initial responses indicated that the FBI might have information relating to the applicants. See id. ¶ 24. That high volume of background check requests has placed a significant burden on the FBI's resources, and it is processing most background checks in the order in which they are received. See id. ¶ 26 (noting that the volume of background check inquiries has outpaced the FBI's resources). Accordingly, this is not a case in which Defendants have refused to take any action on Plaintiff's application. Instead, any delay is attributable to the agencies' limited resources and their desire to process applications and security screenings in an orderly fashion.[4] See generally Saleh v. Ridge, 367 F. Supp. 2d

---

[4] The FBI has taken several steps to improve the background check program, including the use

508,513 (S.D.N.Y. 2005) (concluding five-year delay in adjudicating asylum based I-485 was not unreasonable in light of the volume of applications in the system).

The complexity of the task at issue, which is another factor contributing to the FBI's backlogs, also is relevant to the rule of reason analysis.  See Mashpee Wampanoag Tribal Council, Inc., 336 F.3d at 430.  The FBI background check is a complex process.  See Cannon Decl. ¶¶ 2-30; Eldeeb v. Chertoff, 2007 WL 2209231, at *2-*5 (M.D. Fla. July 30, 2007) (describing the steps and actions entailed in the process).  It involves a check of a variety of sources, and although many background checks are resolved in a matter of days, approximately thirty two percent require additional, manual review.  See id. ¶ 13.  Most of those remaining checks typically are returned within two months.  See id. ¶ 14.  However, approximately ten percent are identified as possibly being the subject of an FBI record, and the FBI must retrieve and review the relevant records (many of which are in paper, and not electronic, form).  See id. ¶ 15.  Further, background checks from applicants with "common names" typically take longer to process.  Id. ¶ 28.  Common names often have more than two hundred "hits," i.e., possible matches with a name in an FBI record.  See Cannon Decl. ¶¶ 27-28.  Plaintiff was not among the ninety percent of applicants whose background checks could be completed within three months. Instead, his background check on the name "Matthew Chang" was completed by the FBI on February 6, 2008.  Cannon Decl. ¶ 45.  As a result, USCIS could not complete its adjudication of her application within a processing time that is subjectively satisfactory to Plaintiff.

Finally, Plaintiff claims that the delay thus far in a final resolution of "Mr. Chang's name check is solely the result of failures both systemic and clerical in the processing of Mr. Chang's case[,]" resulting from the fact that Mr. Chang's given name "Jin Woo" was first submitted for a FBI name check in February, 2008.  R. 13-2 at 12.  However, there are Standard Operating of contractors and hiring additional personnel.  See Cannon Decl. ¶¶ 31-38.

Procedures (SOPs) in place for all of USCIS to follow in processing adjustment of status cases. See Enzer Supp. Decl. ¶ 3. Regardless of whether Plaintiff thinks that the USCIS adjudication process is efficient, the USCIS staff has followed the SOPs in processing Plaintiff's application properly. See id. ¶¶ 3-5; see also Enzer Decl. ¶ 8 . Even though Plaintiff indicated his given name for the first time on the Form G-325A as part of his application (albeit incorrectly, as the first page of the I-485 clearly provides a space for "Given Name", rather than "First Name", to which "Matthew" may have been more appropriate), see R. 13 at 13, Exh. 3, it was in accordance with USCIS procedures that Defendants first acted on Plaintiff's other name ("Jin Woo") at the time of Plaintiff's interview in February, 2008. See Enzer Supp. Decl. ¶¶ 3-5. If Plaintiff is concerned with the procedure that USCIS employs in adjudicating applications, the proper venue to voice that concern is Congress, which has jurisdiction to affect this USCIS policy. As stated previously, this Court does not.

**B. The Impact of the Delay Is Insubstantial Compared With the National Interest in Complete and Thorough Background Checks.**

The third TRAC factor, which somewhat overlaps with the fifth factor, asks whether the case is primarily about "human health and welfare" or "economic regulation." See In re Barr Laboratories, Inc., 930 F.2d 72, 75 (D.C. Cir.), cert. denied, 502 U.S. 906 (1991). The fifth factor addresses the nature and the extent of the interests prejudiced by the delay. Plaintiff may be inconvenienced by the delay in adjudication and completion of his background check. However, in most cases, the adverse impact caused by the delay is not substantial. Applicants for adjustment of status who have pending applications may apply for and obtain employment authorization for the entire time the application is pending. Additionally, most applicants may apply for and receive advance parole to enable them to travel abroad during the pendency of their application. Plaintiff does not claim that the delay has prevented him from traveling abroad,

finding gainful employment, or anything else for that matter.  Further, it is far from certain that Plaintiff will be eligible to become a lawful permanent resident; if the background checks or subsequent inquiries yield information that causes USCIS to deny his application for lawful permanent residency, Plaintiff will be in a worse position after adjudication than he is now.

Plaintiff is also concerned that "failure to adjudicate Mr. Chang's application for adjustment of status by August 12, 2008 may well result in indefinite delays in him becoming a lawful permanent resident."  R. 13 at 16.  While Plaintiff would have to undergo additional fingerprint and IBIS checks if a final decision is not made with regard to his application by August 2008, see Enzer Decl. ¶ 6, these would not likely result in an indefinite delay to the processing of the application.  Although there is no requirement for these checks to be completed in any particular amount of time, "Plaintiff's most recent IBIS checks were most recently run on February 13, 2008, and the results came back on February 13, 2008.  Plaintiff's most recent fingerprint checks were run on May 29, 2007, and the results returned on May 30, 2007."  Enzer Supp. Decl. ¶ 6.[5]  However, with regard to Plaintiff's contention that his application should be expedited, "USCIS has considered the discretionary matter of expediting this case, and has found that this application does not meet the USCIS criteria for expedition and is ineligible for it."  Id. ¶ 7.

Turning to the fourth TRAC factor, whatever harm Plaintiff may face as a result of waiting for the results of Defendants' adjudication and investigations, those individual interests cannot outweigh Defendants' interests in fully and accurately completing each background check.  For purposes of the TRAC analysis, the relevant question is whether the importance of acting on the allegedly delayed action is outweighed by agency activities of a higher or

---

[5] In his first declaration, Declarant Ethan Enzer indicated mistakenly that the results of the most recent FBI fingerprint check returned on May 29, 2007, when in fact the results returned on May 30, 2007.  See Enzer Decl. ¶ 6.

competing priority.  Courts view this as the most important of the <u>TRAC</u> factors.  <u>See</u> <u>Wong Sze</u> <u>v. INS</u>, 1997 U.S. Dist. LEXIS 10822, *25 (N.D. Ca. 1997) (citing <u>Fraga v. Smith</u>, 607 F. Supp. 517, 521 (D. Or. 1985)).  In this case, the competing agency priorities — namely, enforcing USCIS's security investigation and background check requirement, and the FBI's interest in obtaining thorough and accurate results for all investigations and background checks — are of paramount importance, and cannot be sacrificed for Plaintiff's personal desire to obtain a swifter ruling on his pending application.  <u>See</u> <u>Liberty Fund</u>, 394 F. Supp. 2d at 118.

Security background checks for individuals seeking immigration benefits are a key component to our nation's security.  <u>See</u> The 9/11 Commission Report, 2004 WL 1634382 at 352 (July 22, 2004) (finding that "had the immigration system set a higher bar for determining whether individuals are who or what they claim to be . . . it could have potentially excluded, removed, or come into further contact with several hijackers who did not appear to meet the terms for admitting short-term visitors").  These checks have revealed significant derogatory information on various alien applicants for immigration benefits, including information concerning involvement in criminal and terrorist activities.  <u>See</u> USCIS Fact Sheet at 1 (attached as Exh. 2 hereto).  USCIS conducts security checks for all applicants, to "enhance national security and ensure the integrity of the immigration process."  <u>Id.</u> at 1.  Consequently, USCIS will not grant an application before those security checks are initiated, and until the FBI's background check is complete or has been pending for more than 180 days and the application is otherwise approvable.  <u>See</u> <u>id.</u> at 1.

As the highest of priorities, "our national security requires that caution and thoroughness in these matters not be sacrificed for the sake of expediency."  <u>Safadi v. Howard</u>, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006).  The FBI determined in 2002 that "deeper, more detailed clearance

procedures were required to protect the people and the interests of the United States effectively."
Cannon Decl. ¶ 23. Moreover, the FBI has determined that it must ensure that the results of the
investigatory process are "accurate and thorough," id. ¶ 39, and that those security interests
cannot yield to speed. Likewise, at the time Plaintiff's application was filed, USCIS had
determined that all checks must be completed before it adjudicates an application. See Fact
Sheet at 1-2. At the time USCIS submitted a background check request on Plaintiff's birth name
("Jin Woo"), it was USCIS policy to wait up to 180 days for the FBI to send background check
results. Although a delay in processing may have some negative impact upon individual
applicants like Plaintiff, "in this post-9/11 context, agencies must have the freedom to carefully
and thoroughly investigate these applications without judicial interference in their priorities."
Patil v. Mueller, 2007 WL 1302752, at *2 (E.D. Va. Apr. 30, 2007).

**C. Prioritizing Plaintiff's Application Would Simply Delay Defendants' Adjudication and Screening of Other Individuals Seeking Immigration Benefits.**

Finally, even if the TRAC factors favored Plaintiff, this case would not warrant judicial
intervention into Defendants' processing of adjustment of status applications, security
investigations, or background checks. See Mashpee Wampanoag Tribal Council, Inc., 336 F.3d
at 1100. As of the end of Fiscal Year 2007, the FBI had over 402,800 pending background
check requests, of which 197,900 involved adjustment of status applications. See Cannon Decl.
¶ 26. USCIS has reported that, as of April 2008, it has been waiting over three years for the
completion of about 60,000 FBI name checks for immigration applications. Enzer Supp. Decl. ¶
9. Giving Plaintiff's background checks priority over those other individuals' checks would
simply delay the completion of those other investigations. That would not be equitable, and

> would set a dangerous precedent, sending a clear signal that more litigious
> applicants are more likely to be moved to the top of the proverbial pile over other
> applicants that have waited even longer. Such a situation hardly optimizes
> resources, and serves only the individual at the detriment to the group.

13

<u>Dmitrenko v. Chertoff</u>, No. 07-82, 2007 WL 1303009, at * 1 (E.D. Va. Apr. 30, 2007); <u>Orlov v. Howard</u>, 523 F. Supp. 2d 30, 36 (D.D.C. 2007) (quoting same). Thus this is a case in which "a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." <u>Mashpee Wampanoag Tribal Council, Inc.</u>, 336 F.3d at 1100. Contrary to Plaintiff's contentions, <u>see</u> R. 13 at 17, Plaintiff is not entitled to special treatment because (1) the case is not subject to any USCIS temporal guidelines, and (2) the USCIS staff handled Plaintiff's applications in accordance with existing processing procedures. <u>See</u> pp. 8, 11-12, *supra.*

Given that USCIS and the FBI are treating Plaintiff in the same manner as other applicants, and are working conscientiously to reduce the backlog, the Court should not require them to move Plaintiff ahead of other applicants awaiting background check results. <u>See</u> <u>id.</u> at 1100-01; <u>In re Barr Laboratories, Inc.</u>, 930 F.2d at 75-76 (concluding that interfering with the FDA's priorities in order to place one applicant ahead of other similarly situated applicants was inappropriate); <u>Espin</u>, 381 F. Supp. 2d at 266 (concluding that Plaintiff "has given no reason for the Court to compel the CIS to devote immediate attention to her adjustment application" and prioritize it over the over 250,000 applications filed in New York alone that year). As explained <u>supra</u>, the volume of background checks has surpassed the FBI's resources, but the FBI is taking steps to address the delays and reduce the backlog. <u>See</u> Cannon Decl. ¶¶ 31-38. Unless the applicant's background check meets the criteria for being expedited, the FBI "generally works on the oldest name checks first — a first-in, first-served protocol." Cannon Decl. ¶ 17. This order applies at "each stage of processing," and reflects the FBI's judgment that "all applicants are equally deserving" and should be treated fairly. <u>Id.</u> To the extent that there may be individuals who filed their adjustment of status applications after Plaintiff but have received a final

adjudication of the application, that simply indicates that those individuals' background checks could be completed at the earlier (and typically shorter) stages of the FBI's process, or that they were expedited.[6]

Agencies maintain "great latitude in determining their agendas." In re Monroe Communications, Corp., 840 F.2d 942, 946 (D.C. Cir. 1988). As the Court of Appeals stated:

> [W]e have no basis for reordering agency priorities. The agency is in a unique - and authoritative - position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.

In re Barr Laboratories, Inc., 930 F.2d at 76. Here, within the confines of the resources allocated to them, USCIS and the FBI have developed a process for handling the millions of applications and background checks submitted to them. A court should be loathe to upset the balance they have struck. An order requiring the shifting of priorities, accelerating one application over another, or giving some kind of preferential treatment to one group of cases would upset this delicate balance without full appreciation of the consequences to the agencies and other applicants. In sum, Plaintiff should be required to wait his turn, like all other applicants, rather than being moved forward in the queue to the detriment of others.

### D. Defendants Are Making a Good Faith Effort to Address the Delay.

The sixth and final TRAC factor provides that a court need not find impropriety to hold that an agency action is unreasonably delayed. Conversely, "the good faith of the agency in addressing the delay weighs against mandamus." Liberty Fund, 394 F. Supp. 2d at 120. Here, the delay in USCIS's completion of the adjudications is attributable to the pendency of Plaintiff's background checks. Enzer Decl, ¶¶ 7, 9. As discussed supra, the FBI is processing the background checks to the best of its ability, and USCIS is monitoring the case to ensure that once

---

[6] One other exception to the first-in policy is the FBI and USCIS effort to reduce name checks by prioritizing "single hit" name checks. See Cannon Decl. ¶ 20.

the background checks are complete, or have been pending more than 180 days and is otherwise

approvable, it can complete adjudication.  Further, the FBI has taken several steps to reduce the

backlog that affected the background check on "Matthew Chang", and is continuing to explore

means of improving the name check program.  See Cannon Decl. ¶¶ 31-38.  Given that both

agencies are taking active steps towards completing the background checks and adjudicating

Plaintiff's application, this final factor of the TRAC analysis supports entry of judgment for

Defendants.  See Saleh, 367 F. Supp. 2d at 513 (finding five-year delay was not unreasonable

under APA); Espin, 381 F. Supp. 2d at 266 (three-year delay not unreasonable because of

government's limited resources and substantial caseload); Alkenani v. Barrows, 356 F. Supp. 2d

652, 656-57 (N.D. Tex. 2005) (no unreasonable delay in naturalization context because of need

to wait for completion of FBI investigation).

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Motion to Dismiss,

Defendants respectfully request that the Court DENY Plaintiffs' Motion for Summary Judgment

and GRANT Defendants' Motion to Dismiss, or in the alternative, GRANT Defendants' Motion

for Summary Judgment, or, in the alternative, TRANSFER this case to the District of

Connecticut or, in the alternative, TRANSFER this case to the District of Vermont.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/
BRANDON L. LOWY,
Special Assistant United States Attorney
555 Fourth St., NW
Washington, D.C.  20530
Phone: (202) 307-0364
Brandon.Lowy@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————————————————
                                                   )
MATTHEW J. CHANG,                                  )
                                                   )
Plaintiff,                                         )
                                                   )
v.                                                 )        Civil Action No. 07-2139 (RCL)
                                                   )
MICHAEL CHERTOFF,                                  )
Secretary, Homeland Security, et al.,              )
Defendants.                                        )
————————————————————————)

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE DISPUTE

Pursuant to Local Rules 7(h) and 56.1, Defendants hereby submit the following statement of

material facts as to which there is no genuine dispute.  Defendants believe that there are no

material facts in dispute that would preclude disposition of this case on the merits by entry of

summary judgment.  The facts established below are sufficient to support the award of summary

judgment to Defendants.

1. Plaintiff Matthew CHANG filed an I-485 application for adjustment of status to that of a
   lawful permanent resident.  See Compl. ¶ 1.

2. United States Citizenship and Immigration Services requested national security
   screenings in connection with Plaintiff's adjustment of status application.  See R. 11 Exh.
   1 ("Enzer Decl."), ¶¶ 7, 9.

3. With regard to Plaintiff "Matthew Chang" name check, USCIS would not grant an
   immigration service or benefit before the required security checks are complete,
   commensurate with USCIS policy as of the time that Plaintiff's application was filed.
   See USCIS Fact Sheet (Exh. 3).

4. On February 13, 2008, when Plaintiff was interviewed, it was discovered that Plaintiff had two distinct names, "Matthew Chang" and "Jin Woo Chang".  Enzer Decl, ¶ 8.

5. Plaintiff provided the name Matthew Chang on his application, yet other documents, such as his birth certificate and G-325A "Biographic Information" Sheet, indicate the name of Jin Woo Chang.  Id.

6. In accordance with Standard Operating Procedures, USCIS only uses the first page of an application to determine the names to be sent to the FBI for a name check, and it was not brought to the attention of USCIS that "Jin Woo Chang" should be submitted to the FBI for a name check until Plaintiff was interviewed on February 13, 2008.  Id.; see also Enzer Supp. Decl. ¶¶ 3-5.

7. The FBI has not yet completed all of the necessary background checks for Plaintiff.  See See R. 11 Exh. 2 ("Cannon Decl."), ¶ 43.; Enzer Decl. ¶¶ 7, 9.

8. Pursuant to a USCIS policy initiated on February 4, 2008, USCIS must await the passage of 180 days in order to provide the FBI an opportunity to reply to the name check inquiry. Enzer Decl. ¶ 10.

9. Should the FBI not reply within 180 days, USCIS will proceed to complete adjudication of the application of Plaintiff.  Id.

10. The FBI has determined that its "mission on homeland security requires that its name check process be primarily focused on providing accurate and thorough results."  Cannon Decl., ¶ 39.

Respectfully submitted,


/s/ _____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney



/s/ _____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney



/s/ _____
BRANDON L. LOWY,
Special Assistant United States Attorney
555 Fourth St., NW
Washington, D.C.  20530
Phone: (202) 307-0364
Brandon.Lowy@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
MATTHEW J. CHANG,                                   )
                                                    )
Plaintiff,                                          )
                                                    )
v.                                                  )        Civil Action No. 07-2139 (RCL)
                                                    )
MICHAEL CHERTOFF,                                   )
Secretary, Homeland Security, et al.,               )
Defendants.                                         )
_____)

## ORDER

Upon consideration of Defendants' Alternative Motion for Summary Judgment, it is this

_____ day of _____, 2008,

ORDERED that Defendants' Alternative Motion for Summary Judgment be and hereby is

GRANTED;

It is further ORDERED that summary judgment be and hereby is entered in favor of

Defendants.

SO ORDERED.

_____
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ------------------------------------------- ) | |
| MATTHEW J. CHANG, ) | |
| a/k/a, Jin Woo Chang, ) | |
| A98 899 066 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-2139 (RCL) |
| ) | |
| MICHAEL CHERTOFF, ) | |
| Secretary, Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ------------------------------------------- ) | |

## SUPPLEMENTAL DECLARATION

I, Ethan Enzer, pursuant to 28 U.S.C. §1746, hereby declare:

1.  I am currently employed as Field Office Director ("FOD") at the Hartford, Connecticut office of U.S. Citizenship and Immigration Services ("USCIS"), an agency within the U.S. Department of Homeland Security ("DHS"). I have held this position since March 1, 2004.

2.  The Plaintiff filed an I-485, Application for Adjustment of Status on February 28, 2005. The Plaintiff's application was transferred to the USCIS Hartford Field Office on January 29, 2008.

3.  USCIS operates under Standard Operating Procedures ("SOPs"), which are in place for all USCIS offices to follow in processing Adjustment of Status cases and handling applications.

The SOPs for the opening of files for new Adjustment of Status applications state that, for the purpose of a primary name check, an applicant's name is to be taken from the first page of the Form I-485 portion of the application submitted. This information is entered into the USCIS computer system, and is then transmitted to the Federal Bureau of Investigation ("FBI") to begin processing a background check on the applicant's name.

4.     After the name check request is sent to the FBI, it is the responsibility of a USCIS adjudications officer to review all of the supporting documentation submitted in support of the application. The officer must review birth certificates, the Form G-325A, copies of passports, marriage certificates, divorce papers, and other documents. If the adjudications officer finds a different name any document, the officer must review the file to find the origin of the "discovered" name. If the information is not contained in the applicant's "A" (immigration) file, a request for additional supporting documentation is made.

5.     In most cases the discovery of another name is not revealed until an in-person interview is conducted. The interview allows the adjudications officer to question the applicant in person and learn more about the "discovered" name, as well as any additional ones.

6.     Plaintiff's most recent IBIS checks were most recently run on February 13, 2008, and the results came back on February 13, 2008. Plaintiff's most recent fingerprint checks were run on May 29, 2007, and the results returned on May 30, 2007.

7.     USCIS has considered the discretionary matter of expediting this case, and has found that this application does not meet the USCIS criteria for expedition and is ineligible for it.

8.   Currently the USCIS Hartford Field Office has over 3,800 pending adjustment of status applications, and 175 of them are employment-based I-1485 applications.

9.   USCIS has reported that, as of April 2008, it has been waiting over three years for the completion of about 60,000 FBI name checks for immigration applications.

Date *June 12, 2008*

_____

Ethan Enzer,

Field Office Director

*Press Office*
**U.S. Department of Homeland Security**



# Fact Sheet

April 25, 2006

## Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

**How Immigration Security Checks Work**

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors.  Different kinds of applications undergo different levels of scrutiny.  USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check—**  IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns.  USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case.  Results of an IBIS check are usually available immediately.  In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check—**FBI fingerprint checks are conducted for many applications.  The FBI fingerprint check provides information relating to criminal background within the United States.  Generally, the FBI forwards responses to USCIS within 24-48 hours.  If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS.  At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit.  Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations).  In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history.  Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks—**FBI name checks are also required for many applications.  The FBI name check is totally different from the FBI fingerprint check.   The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement.  Initial responses to this check generally take about two weeks.  In about 80 percent of the cases, no match is found.  Of the remaining 20 percent, most are resolved within six months.  Less than one percent of cases subject to an FBI name check remain pending longer than six months.  Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits.  Most cases proceed forward without incident.  However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable.  Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS.  Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

several years to resolve.  Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided.  USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.